# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

CHERYL RUNNEBAUM,

        Plaintiff,

v.

                              Case No. 2:24-cv-2012

KANSAS CITY KANSAS
COMMUNITY COLLEGE,

        Defendant.

## COMPLAINT

Plaintiff Cheryl Runnebaum ("Runnebaum" or "Plaintiff"), for her Complaint Defendant the Kansas City Kansas Community College ("KCKCC" or "the College" or "Defendant") and states and alleges as follows:

## PARTIES

1. Plaintiff Cheryl Runnebaum is a resident of the State of Kansas.

2. Defendant KCKCC is a public community college located in Kansas City, Kansas.

3. Plaintiff was employed by KCKCC.

4. At all times relevant herein, each of the officers, agents, and employees of Defendant identified herein were acting within the course and scope of their employment with Defendant.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this cause of action pursuant to 28 U.S.C. § 1331, 1337, and 1343(a)(4), as well as 42 U.S.C. § 2000e-5(f).

6. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action. With respect to the unlawful employment practices alleged herein, a timely Charge of Discrimination was filed with the Equal Employment Opportunity Commission

("EEOC") on June 8, 2023. The Charge of Discrimination was filed within 180 days of the most recent incident of discrimination alleged therein. A true and correct copy of Plaintiff's Charge of Discrimination is attached hereto and incorporated by reference as Exhibit A.

7. On October 16, 2023, Plaintiff was issued her Notice of Right to Sue, authorizing her to proceed with her claims within 90 days thereafter. A true and correct copy of Plaintiff's Notice of Right to Sue is attached hereto incorporated by reference as Exhibit B.

8. The United States District Court for the District of Kansas has personal jurisdiction over Defendant inasmuch as Defendant conducts business within this District.

9. The unlawful employment practices alleged herein were committed within this jurisdiction.

10. Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendant has offices, conducts business, and/or can be found in the District of Kansas, and the cause of action set forth herein has arisen and occurred in substantial part in this district. Venue is also properly laid in this Court pursuant to 29 U.S.C. § 1132(e)(2) because Defendant has substantial business contacts within the State of Kansas.

**FACTS**

11. Plaintiff Cheryl Runnebaum was employed by KCKCC from July 1, 2008, until the unlawful termination of her employment on January 12, 2023. At the time of her termination, Ms. Runnebaum was employed as Dean of Career and Technical Education. In this position she reported directly to Vice President of Academic Affairs Jerry Pope.

12. In July 2022, Ms. Runnebaum began to experience extreme fatigue and related pulmonary symptoms that directly affected her ability to work. On August 12, she was admitted to Saint John's Hospital in Leavenworth, Kansas, and diagnosed by the resident radiologist with

Pulmonary Emboli ("PE") – blood clots that block and stop blood flow to an artery in her lungs and impact her stamina and functional abilities. Ms. Runnebaum remained hospitalized until August 16 was treated by her primary care physician Dr. Peter Cristiano. She was seen again at the Saint John's Hospital emergency department on August 19 with shortness of breath related to her diagnosis with multiple PE.

13. On August 29, 2022, Ms. Runnebaum was admitted to Saint Luke's Hospital for additional treatment related to her diagnosis with multiple PE and remained hospitalized until August 31. She was thereafter scheduled for appointments with Dr. Aarti Keshary with Saint Luke's Cancer Specialists and Dr. Curtis Whiting with Saint Luke's Pulmonary Consultants.

14. On September 22, 2022, Ms. Runnebaum spoke with KCKCC Chief Human Resources Officer Christina McGee regarding her condition and diagnosis and to discuss the anticipated schedule for her treatment. They discussed documentation that would be required to exercise her rights under the FMLA, and Ms. Runnebaum asked Ms. McGee during their call whether the College could terminate her employment while she was on FMLA leave. Ms. McGee replied "**We both know how the college operates and remote work is not allowed, but I will try to fight for you. In the end it's up to [KCKCC President] Dr. [Greg] Mosier and we both know of his history of removing people in your situation**."

15. On September 29, 2022, Ms. Runnebaum was evaluated by her primary care physician, Dr. Peter Cristiano, for consultation regarding the condition for which she had been diagnosed. Dr. Cristiano authored a note at the time of her consultation that allowed her to continue to work in such a fashion that she would be able "without compromising [her] health." Thereafter Ms. Runnebaum provided Dr. Cristiano's note to Christina McGee and Jerry Popoe and spoke with her again by phone about her diagnosis and course of treatment on September 30.

16. Beginning in October, Ms. Runnebaum's interactions with Vice President of Academic Affairs Jerry Pope became more difficult, and she observed that he was frequently dismissive and frustrated with her due to her recent absences for evaluation and treatment of her recently diagnosed medical conditions. Ms. Runnebaum was concerned about potential retaliation from Mr. Pope because she had observed other employees who were treated differently after they exercised their rights under the FMLA – especially female colleagues.

17. During a conversation with Mr. Pope early in October, Ms. Runnebaum explained that she would no longer be physically able to work 70-80 hours per week, and that her physician was concerned that overextending herself at work would exacerbate the symptoms she was experiencing related to her recent diagnoses. During their call Mr. Pope rudely responded "**I really don't understand your illness. It doesn't make any sense to me**." She told Mr. Pope that she feared she would lose her job as a result of her medical condition and recent absences from work. Mr. Pope added that he had learned through others that Ms. Runnebaum had recently been away from work on numerous occasions and questioned why she appeared to have been so frequently absent. She responded "you and HR have approved all of my absences" and felt that she was being retaliated against for having exercised her rights under the FMLA. Ms. Runnebaum asked whether he felt she had fallen behind on her workload and asked "why are you even bring this to me knowing I almost died and that I am still seriously ill?" Ms. Runnebaum told him that his comments were inappropriate given her medical condition and questions whether his actions were lawful. He responded "I can't say what's allowed and what's not." Thereafter Ms. Runnebaum had considerable difficulty reaching Mr. Pope by phone and email.

18. On October 6, 2022, Ms. Runnebaum exchanged text messages and spoke by phone with Dean of Assessment Ceclia Brewer regarding their shared concerns that they had experienced

4

various inequities in their workloads as compared to their male counterparts at the direction of Vice President of Academic Affairs Jerry Pope. They discussed the fact that Director of Assessment Cynthia Goudeau and Associate Dean of Career and Technical Education Ashley Irvin shared their concerns.

19. On October 7, 2022, Ms. Runnebaum was referred to the Mayo Clinic Division of Hematology in Rochester, Minnesota, for an appointment the following month.

20. On October 24, 2022, Ms. Runnebaum received an email from Benefits Coordinator Sherita Williams informing her that she should have returned to campus full time on October 17 according to Jerry Pope. Mr. Pope had not previously raised this subject with her, though he had been regularly advised about Ms. Runnebaum's condition and absence from work related to her treatment.

21. On October 27, 2022, Ms. Runnebaum spoke with Christina McGee about the status of her health and her recent absences. Ms. McGee explained that she was concerned about her well-being, raised the possibility that Ms. Runnebaum's work was negatively affecting her treatment and recovery, and suggested that Ms. Runnebaum should remain away from work for 1-2 weeks on continuous FMLA leave to focus on her health. In response Ms. Runnebaum expressed concerns that Jerry Pope and Dr. Mosier would attempt to terminate her employment with the College. She told Ms. McGee about her conversation with Mr. Pope earlier in October set forth in paragraph 17 and described her concerns about the treatment of female deans at the College, including herself. Ms. Runnebaum told Ms. McGee that she felt that Mr. Pope and Dr. Mosier were trying to force her out but that they were finding it difficult because she had managed to keep up with her work responsibilities and because she had exercised her rights under the FMLA. Ms.

McGee recommended that Ms. Runnebaum send her office an email regarding potential ADA accommodations.  Ms. Runnebaum did so two weeks later but received no response.

22. On October 31, 2022, Dr. Aarati Keshary with Saint Luke's Cancer Specialists recommended that Ms. Runnebaum work a maximum of three days per week.  The same day she called Christina McGee and informed her that she would be away from work through November 11, and she approved her FMLA absence through November 14.  During her absence Ms. Runnebaum received an email from HR informing her that Mr. Pope was requiring her to return to campus immediately

23. On November 13, 2022, Ms. Runnebaum exchanged text messages with Jerry Pope and explained:

> Would you be free for a phone call around 8 am?  Christina [McGee] and I had spoken about the ADA, and I think I would like to move towards that vs FMLA in January.  I truly believe I will get more answers at Mayo and improving my health.  Bevause [sic] of that, instead of permanent accommodations, we reevaluate after 2-3 months to get me back to 5 days/week onsite.  Anyway, just wanted to speak with you about it before I send my letter.

24. Ms. Runnebaum and Mr. Pope spoke the following day and discussed accommodations of her condition that would include working remotely on a part-time basis and reasonable absences as needed for her medical condition.  Mr. Pope seemed receptive to this proposal but told her that he felt like a formal ADA accommodation request was an "unnecessary step."  Ms. Runnebaum returned to work on a part-time basis from November 16 through 19, and campus was closed from November 21 through 27 for the Thanksgiving holiday.

25. Ms. Runnebaum departed for the Mayo Clinic on November 27, and on November 28 she received an email from Dr. Mosier insisting that she make herself available to attend a meeting at KCKCC with Special Projects Coordinator Katie Lindgren on November 29.  Ms.

Runnebaum responded to Dr. Mosier and Jerry Pope that she was at the Mayo Clinic on approved FMLA leave, and that Ms. Lindgren was away on bereavement. Dr. Mosier nevertheless insisted that they both make themselves available to be on campus for the meeting. Ms. Runnebaum made arrangements to participate remotely instead.

26. From November 27 through December 7, 2022, Ms. Runnebaum was evaluated at the Mayo Clinic in Rochester, Minnesota. During her evaluation at the Mayo Clinic, she sought to be placed on continuous FMLA leave but her request was denied because she had various work-related deadlines on December 16. During a phone conversation during her evaluation at the Mayo Clinic, Jerry Pope explained that "**it is our expectation that you meet your deadlines. You are already behind on these projects because of your health**." During her absence Ms. Runnebaum also sent numerous emails to Mr. Pope and Christina McGee with updates about her efforts to meet work-related deadlines while she was away. In her email communications she requested extensions of several deadlines that were denied. Ms. Runnebaum asked Mr. Pope for confirmation that he had received her communications regarding her absence and her efforts to meet her work obligations during her evaluation, and he did not respond.

27. During her evaluation at the Mayo Clinic, Ms. Runnebaum also received an email from HR on November 30 informing her that Jerry Pope was requiring her to submit 40 hours of time per week during her absence. Ms. Runnebaum explained again that she was away from work on an approved FMLA absence and that Mr. Pope was aware of the nature of her medical condition and treatment.

28. In her role as Dean of Career and Technical Education, Ms. Runnebaum was tasked with various responsibilities related to course scheduling. On December 6, 2022, she raised concerns with Jerry Pope that two minority instructors were being treated differently than their

non-minority counterparts at KCKCC in course scheduling and related terms and conditions of their employment. On December 7, she received an angry email from Mr. Pope challenging the basis for the concerns she had raised with him. When they spoke by phone the same day, she explained that she intended to report her concerns to HR, and he refused to discuss her concerns further. He explained "[t]his is too messy. I don't even know how to process this." When Ms. Runnebaum explained again that she disagreed with his unfair treatment of both minority instructors, he said "I gave you a directive. You will follow it." Ms. Runnebaum made reports to HR about her concerns to HR the same day.

29. On December 16, 2022, Ms. Runnebaum was placed on paid administrative leave after a meeting with KCKCC donors Tom Cohen and Brad Bergman of Midwest Trust on December 15. Christina McGee explained that she had received a complaint that Ms. Runnebaum had somehow inappropriately shared student data with a third party in violation of the Federal Educational Rights and Privacy Act ("FERPA"). During a call with Ms. McGee on December 16, Ms. Runnebaum denied that she had violated FERPA in any way and expressed that she felt that her suspension was directly related to her illness and to concerns regarding discrimination she had raised against herself and her colleagues.

30. On December 21, 2022, Ms. Runnebaum was evaluated again by her primary care physician, Dr. Peter Cristiano, for her continuing extreme fatigue related to her diagnosis with PE. Dr. Cristiano authored another note at the time of her consultation that reflected that she suffered from "continued medical problems that are still under evaluation at the Mayo Clinic" and authorized her to continue intermittent FMLA leave for a period of at least six additional months. She then provided Dr. Cristiano's note to Christina McGee.

31. Ms. Runnebaum's employment was terminated on January 12, 2023, on the purported basis that she had somehow violated FERPA by sharing student data with a third party. The rationale for the basis of her termination constitutes pretext for unlawful discrimination and retaliation.

32. On February 3, 2023, a regularly scheduled mammogram was performed as part of her course of treatment that revealed a mass of an unknown origin.  On February 6 an ultrasound was performed, and on a compression mammogram the following day revealed the mass was not moving.  After a biopsy on February 22, Ms. Runnebaum was diagnosed with and began treatment for breast cancer on February 24.  Her physicians have since determined that her breast cancer was the underlying cause for the Pulmonary Emboli for which she was originally diagnosed on August 12, 2022.

## **COUNT ONE – DISABILITY DISCRIMINATION**

33. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

34. Plaintiff was employed by Defendant.

35. Defendant is vicariously liable for the actions of its employees and agents.

36. Plaintiff suffers from Pulmonary Emboli – blood clots that block and stop blood flow to an artery in her lungs and related conditions that impact her stamina and functional abilities. She is disabled and perceived as disabled.  She also has a record of impairments that may substantially limit one or more of her major life activities.

37. Plaintiff was qualified for her position at the time Defendant and its agents took adverse employment actions against her.

38. Defendant and its agents knew that Plaintiff suffered from a disability, was perceived as disabled, and/or had a record of impairments that may substantially limit one or more major life activities.

39. The actions of Defendant and its agents constitute discrimination against Plaintiff on the basis of her disability, the perception that she is disabled, or her record of impairments that may substantially limit one or more major life activities in violation of the ADA.

40. The adverse employment actions against Plaintiff occurred under circumstances raising a reasonable inference that her disability was a determining factor in Defendant's decision to both alter the terms and conditions of and to terminate Plaintiff's employment.

41. Plaintiff's employment was terminated for reasons that constitute pretext for unlawful retaliation.

42. As a direct and proximate result of Defendant's actions and/or inaction, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

43. As a further direct and proximate result of Defendant's actions and/or inaction, Plaintiff has suffered humiliation, emotional pain, distress, suffering, inconvenience, mental anguish, and related compensatory damages.

44. Defendant failed to make good faith efforts to enforce its policies to prevent discrimination against its employees, including Plaintiff.

45. Defendant failed to properly train or otherwise inform their supervisors and employees concerning the duties and obligations under the civil rights laws, including the ADA.

46. As shown by the foregoing, Defendant engaged in these discriminatory practices with malice or reckless indifference to the federally protected rights of Plaintiff. Plaintiff is

therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant or to deter it and others from like conduct in the future.

47. The conduct of Defendant was outrageous due to its evil motive and/or reckless disregard for Plaintiff's civil rights, entitling her to an award of punitive damages.

48. Plaintiff is also entitled to recover her costs, expenses, expert witness fees, and attorney's fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count I of her Complaint, for a finding that he has been subjected to unlawful discrimination prohibited by 42 U.S.C. § 12112 *et seq.;* for an award of back pay, including lost fringe benefits, bonuses, costs of living increases and other benefits including interest; for an award of front pay in a reasonable amount; for an award of compensatory and punitive damages; for her costs expended; for her reasonable attorney's and expert witness fees provided by 42 U.S.C. § 12205; and for such other and further relief the Court deems just and proper.

## COUNT TWO – RETALIATION (ADA)

49. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

50. Plaintiff was employed by Defendant.

51. Plaintiff suffered intentional discrimination at the hands of Defendant during the course of her employment with Defendant on the basis of her disability, the perception that she is disabled, and/or her record of impairments that may substantially limit one or more major life activities in violation of the ADA.

52. Plaintiff objected to and complained about that discrimination.

53. Plaintiff's complaints concerning the discrimination against her on the basis of her disability, the perception that she is disabled, and/or her record of impairments that may

substantially limit one or more major life activities in violation of the ADA constitute protected activities.

54. Because of Plaintiff's complaints, Defendant retaliated against Plaintiff.

55. The retaliation against Plaintiff was committed with malice or reckless disregard of her federally protected rights. Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant and to deter them and others from engaging in similar conduct.

56. Plaintiff's employment was terminated for reasons that constitute pretext for unlawful retaliation.

57. As a direct and proximate result of the actions and/or inaction of Defendant, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

58. As a further direct and proximate result of the actions and/or inaction of Defendants, Plaintiff has suffered humiliation, emotional pain, distress, suffering, inconvenience, mental anguish, and related compensatory damages.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count II of her Complaint, for a finding that she has been subjected to unlawful retaliation prohibited by 42 U.S.C. § 12112 *et seq.;* for an award of back pay, including lost fringe benefits, bonuses, costs of living increases and other benefits including interest; for an award of front pay in a reasonable amount; for an award of compensatory and punitive damages; for her costs expended; for her reasonable attorney's and expert witness fees provided by 42 U.S.C. § 12205; and for such other and further relief the Court deems just and proper.

### **COUNT THREE – SEX DISCRIMINATION**

59. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

60. Plaintiff is female.

61. Defendant treated Plaintiff less favorably than similarly situated male employees in the terms and conditions of her employment.

62. The actions of Defendant and its agents constitute discrimination against Plaintiff on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq*. ("Title VII").

63. The adverse employment actions against Plaintiff occurred under circumstances raising a reasonable inference that her sex was a motivating and/or determining factor in Defendant's decision to terminate Plaintiff's employment.

64. As a direct and proximate result of Defendant's actions and/or inaction, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

65. As a further direct and proximate result of Defendant's actions and/or inaction, Plaintiff has suffered humiliation, emotional pain, distress, suffering, inconvenience, mental anguish, and related compensatory damages.

66. Defendant failed to make good faith efforts to establish and enforce policies to prevent unlawful discrimination against its employees.

67. Defendant failed to properly train or otherwise inform their supervisors and employees concerning the duties and obligations under the civil rights laws, including Title VII.

68. The discrimination against Plaintiff was committed with malice or reckless disregard of her federally protected rights. Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant and to deter them and others from engaging in similar conduct.

69. The conduct of Defendant was outrageous due to its evil motive and/or reckless disregard for Plaintiff's civil rights, entitling her to an award of punitive damages.

70. Plaintiff is also entitled to recover her costs, expenses, expert witness fees, and attorney's fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count III of her Complaint, for a finding that she has been subjected to unlawful discrimination prohibited by 42 U.S.C. § 2000(e) *et seq.;* for an award of back pay, including lost fringe benefits, bonuses, costs of living increases and other benefits including interest; for an award of front pay in a reasonable amount; for an award of compensatory and punitive damages; for her costs expended; for her reasonable attorney's and expert witness fees provided by 42 U.S.C. § 2000(e)-5(k); and for such other and further relief the Court deems just and proper.

## COUNT FOUR – RETALIATION (TITLE VII)

71. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

72. Plaintiff was employed by Defendant.

73. Plaintiff suffered intentional discrimination during the course of her employment with Defendant on the basis of her sex in violation of Title VII.  Plaintiff also observed intentional discrimination against others on the basis of their sex in violation of Title VII.

74. Plaintiff objected to and complained about the discrimination against her and others on the basis of their sex.

75. Plaintiff's complaints concerning the discrimination against her and others on the basis of their sex constitute protected activities.

76. Because of Plaintiff's complaints, Defendant retaliated against Plaintiff.

77. The retaliation against Plaintiff was committed with malice or reckless disregard of her federally protected rights. Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant and to deter them and others from engaging in similar conduct.

78. Plaintiff's employment was terminated for reasons that constitute pretext for unlawful retaliation.

79. As a direct and proximate result of the actions and/or inaction of Defendant, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

80. As a further direct and proximate result of the actions and/or inaction of Defendants, Plaintiff has suffered humiliation, emotional pain, distress, suffering, inconvenience, mental anguish, and related compensatory damages.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count IV of her Complaint, for a finding that she has been subjected to unlawful retaliation prohibited by 42 U.S.C. § 2000(e) *et seq.;* for an award of back pay, including lost fringe benefits, bonuses, costs of living increases and other benefits including interest; for an award of front pay in a reasonable amount; for an award of compensatory and punitive damages; for her costs expended; for her reasonable attorney's and expert witness fees provided by 42 U.S.C. § 2000(e)-5(k); and for such other and further relief the Court deems just and proper.

## COUNT FIVE – FMLA INTERFERENCE

81. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

82. While employed by Defendant, Plaintiff qualified as an eligible employee under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq*. ("FMLA").

83. Plaintiff was entitled to the protections provided pursuant to the FMLA.

84. Plaintiff in good faith exercised her rights with Defendant under the FMLA.

85. Plaintiff in good faith requested FMLA qualifying leave from Defendant in advance of the termination of her employment.

86. Defendant interfered with Plaintiff's exercise of her rights under the FMLA in violation of 29 U.S.C. § 2615(a)(1).

87. The adverse employment actions against Plaintiff occurred under circumstances raising a reasonable inference that the exercise of her rights under the FMLA was a motivating and/or determining factor in Defendant's decision to terminate Plaintiff's employment.

88. As a direct and proximate result of Defendant's actions and/or inaction, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

89. As a further direct and proximate result of Defendant's actions and/or inaction, Plaintiff has suffered humiliation, emotional pain, distress, suffering, inconvenience, mental anguish, and related compensatory damages.

90. Defendant failed to make good faith efforts to enforce its policies to prevent interference with the FMLA-related rights of its employees, including Plaintiff.

91. Defendant's conduct was willful thereby entitling Plaintiff to an equal amount as liquidated damages and other appropriate equitable relief.

92. Plaintiff is also entitled to recover her costs, expenses, expert witness fees, and attorney's fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count V of her Complaint, for a finding that Defendant interfered with Plaintiff's right to seek FMLA-related leave; for an award of back pay, including lost fringe benefits, bonuses, costs of living increases and other benefits including interest; for an award of front pay in a reasonable amount; for an

award of compensatory and liquidated damages; equitable relief including reinstatement; for her costs expended; for her reasonable attorney's and expert witness fees provided by 42 U.S.C. § 2617(a)(3); and for such other and further relief the Court deems just and proper.

## COUNT SIX – FMLA RETALIATION

93. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

94. Plaintiff was entitled to the protections provided pursuant to the FMLA.

95. Plaintiff in good faith exercised her rights with Defendants under the FMLA.

96. Plaintiff in good faith requested FMLA qualifying leave from Defendant in advance of the termination of her employment.

97. Defendant retaliated against Plaintiff in the terms and conditions of her employment because of her request to utilize FMLA qualifying leave time, including in the termination of her employment in violation of 29 U.S.C. § 2615(a)(2).

98. Plaintiff's exercise of her rights under the FMLA was a motivating and/or determining factor in Defendants' decision to terminate Plaintiff's employment.

99. Defendant failed to make good faith efforts to enforce its policies to prevent retaliation against its employees, including Plaintiff.

100. As a direct and proximate result of Defendant's actions and/or inaction, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

101. As a further direct and proximate result of Defendant's actions and/or inaction, Plaintiff has suffered humiliation, emotional pain, distress, suffering, inconvenience, mental anguish, and related compensatory damages.

102. Defendant failed to make good faith efforts to enforce its policies to retaliation against individuals who exercise their FMLA-related rights, including Plaintiff.

103. Defendant's conduct was willful thereby entitling Plaintiff to an equal amount as liquidated damages and other appropriate equitable relief.

104. Plaintiff is also entitled to recover her costs, expenses, expert witness fees, and attorney's fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count VI of her Complaint, for a finding that Defendant retaliated against Plaintiff for the exercise of her rights under the FMLA; for an award of back pay, including lost fringe benefits, bonuses, costs of living increases and other benefits including interest; for an award of front pay in a reasonable amount; for an award of compensatory and liquidated damages; equitable relief including reinstatement; for her costs expended; for her reasonable attorney's and expert witness fees provided by 42 U.S.C. § 2617(a)(3); and for such other and further relief the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which she has a right to trial by jury.

**DESIGNATED TRIAL LOCATION**

Pursuant to D. Kan. Rule 40.2, Plaintiff hereby designates the place of trial as **Kansas City, Kansas**.

Respectfully submitted,



/s/ Lewis M. Galloway
Lewis Galloway        Kansas Bar No. 20172
1600 Genessee St Ste 918
Kansas City, MO 64102
Phone: (816) 442-7002
Fax:    (816) 326-0820
lewis@lglawllc.com

ATTORNEY FOR PLAINTIFF