# EEOC Charge of Discrimination

Charge Presented to: Agency(ies) Charge No(s):

**X** FEPA  44839-23
**X** EEOC  563-2023-02681

State or local Agency, if any

| Name (indicate Mr. Ms. Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Cheryl Runnebaum | (913) 702-5684 | [redacted] |

| Street Address | City, State and ZIP Code |
|---|---|
| 26411 155th St | Leavenworth, KS 66048 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Kansas City Kansas Community College | More than 500 | (913) 334-1100 |

| Street Address | City, State and ZIP Code |
|---|---|
| 7250 State Ave | Kansas City, KS 66112 |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

**DISCRIMINATION BASED ON** (Check appropriate box(es).)

__ RACE  __ COLOR  **X** SEX  __ RELIGION  __ NATIONAL ORIGIN

**X** RETALIATION  __ AGE  **X** DISABILITY  __ OTHER (Specify below.)

**DATE(S) DISCRIMINATION TOOK PLACE**
Earliest: August 2022
Latest: January 12, 2023

**X** CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attached extra sheet(s)):

**Please see summary included as Exhibit A.**

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

06 / 08 / 2023    [signature]

Date    Charging Party Signature

FILED
JUN 16 2023

Doc ID: f3430440a2910b3584f3653a2bd5103e2d824e09

## Exhibit A to Cheryl Runnebaum Charge of Discrimination

1. I charge Kansas City Kansas Community College ("KCKCC") with discrimination on the basis of my disability, my perception of being disabled, and/or my record of impairments that substantially limit one or more major life activities and retaliation in violation of the Americans with Disabilities Act ("ADA").[1] I also charge KCKCC with discrimination on the basis of my sex and retaliation in violation of Title VII of the Civil Rights Act of 1964.

2. I was employed by KCKCC from July 1, 2008, until the unlawful termination of my employment on January 12, 2023. At the time of my termination, I was employed as Dean of Career and Technical Education. In this position I reported directly to Vice President of Academic Affairs Jerry Pope.

3. In July 2022, I began to experience extreme fatigue and related pulmonary symptoms that directly affected my ability to work. On August 12, I was admitted to Saint John's Hospital in Leavenworth, Kansas, and diagnosed by the resident radiologist with Pulmonary Emboli (PE) — blood clots that block and stop blood flow to an artery in my lungs and impact my stamina and functional abilities. I remained hospitalized until August 16 was treated by my primary care physician Dr. Peter Cristiano. I was seen again at the Saint John's Hospital emergency department on August 19 with shortness of breath related to my diagnosis with multiple PE.

4. On August 29, 2022, I was admitted to Saint Luke's Hospital for additional treatment related to my diagnosis with multiple PE and remained hospitalized until August 30. I was thereafter scheduled for appointments with Dr. Aarti Keshary with Saint Luke's Cancer Specialists and Dr. Curtis Whiting with Saint Luke's Pulmonary Consultants.

6. On September 22, 2022, I spoke with Chief Human Resources Officer Christina McGee regarding my condition and diagnosis and to discuss the anticipated schedule for my treatment. Ms. McGee discussed documentation that would be required to exercise my rights under the FMLA. I asked Ms. McGee during our call whether the College could terminate my employment while I was on FMLA leave, and she replied **"We both know how the college operates and remote work is not allowed, but I will try to fight for you. In the end it's up to [KCKCC President] Dr. [Greg] Mosier and we both know of his history of removing people in your situation."**

---

[1] The Complaint to be filed on my behalf will also include claims of FMLA-related interference and retaliation alleging that KCKCC's decision to terminate my employment both during and following and my FMLA approved absences interfered with the lawful exercise of my rights under the FMLA and occurred under circumstances giving rise to an inference of retaliation.

7. On September 29, 2022, I was evaluated by my primary care physician, Dr. Peter Cristiano, for consultation regarding the condition from which I had been diagnosed. Dr. Cristiano authored a note at the time of my consultation that allowed me to continue to work in such a fashion that I would be able "without compromising [my] health." Thereafter I provided Dr. Cristiano's note to Christina McGee and spoke with her again by phone about my diagnosis and course of treatment on September 30.

8. Beginning in October, my interactions with Vice President of Academic Affairs Jerry Pope became more difficult, and I observed that he was frequently dismissive and frustrated with me due to my recent absences for evaluation and treatment of my recently diagnosed medical conditions. I recall that I was concerned about potential retaliation from Mr. Pope because I have observed other employees who were treated differently after they exercised their rights under the FMLA – especially female colleagues.

9. During a conversation with Mr. Pope early in October, I explained that I would no longer be physically able to work 70-80 hours per week, and that my physician was concerned that overextending myself at work would exacerbate the symptoms I was experiencing related to my recent diagnoses. During our call he rudely responded "**I really don't understand your illness. It doesn't make any sense to me.**" I told Mr. Pope that I feared I would lose my job as a result of my medical condition and recent absences from work. Mr. Pope added that he had learned that I had recently been away from work on numerous occasions. I responded that I felt I was being retaliated against for having exercised my rights under the FMLA. I asked whether he felt I had fallen behind on my workload and asked "why are you even bring this to me knowing I almost died and that I am still seriously ill?" I told him that his comments were inappropriate given my medical condition and he responded "I can't say what's allowed and what's not." Thereafter I had considerable difficulty reaching Mr. Pope by phone and email.

10. On October 6, 2022, I exchanged text messages and spoke by phone with Dean of Assessment Ceclia Brewer regarding our shared concerns that we had experienced various inequities in our workloads as compared to our male counterparts at the direction of Vice President of Academic Affairs Jerry Pope. We discussed the fact that Director of Assessment Cynthia Goudeau and my Associate Dean of Career and Technical Education Ashley Irvin shared our concerns.

11. On October 7, 2022, I was referred to the Mayo Clinic Division of Hematology in Rochester, Minnesota, for an appointment the following month.

12. On October 24, 2022, I received an email from Benefits Coordinator Sherita Williams informing me that I should have returned to campus full time on October

2

17 according to Jerry Pope. Mr. Pope had not previously raised this subject with me, though he had been regularly advised about my condition and absence from work related to my treatment.

13. On October 27, 2022, I spoke with Christina McGee about the status of my health and my recent absences. She explained that she was concerned about my well-being, raised the possibility that my work was negatively affecting my treatment and recovery, and suggested that I should remain away from work for 1-2 weeks on continuous FMLA leave to focus on my health. In response I expressed concerns that Jerry Pope and Dr. Mosier would attempt to terminate my employment with the College. I told Ms. McGee about my conversation with Mr. Pope earlier in October set forth in paragraph 9 and described my concerns about the treatment of female deans at the College, including myself. I told Ms. McGee that I felt that Mr. Pope and Dr. Mosier were trying to force me out but that they were finding it difficult because I had managed to keep up with my work responsibilities and because I had exercised my rights under the FMLA. Ms. McGee recommended that I send her office an email regarding potential ADA accommodations. I did so two weeks later but received no response.

14. On October 31, 2022, Dr. Aarati Keshary with Saint Luke's Cancer Specialists recommended that I work a maximum of three days per week. The same day I called Christina McGee and informed her that I would be away from work through November 11, and she approved my FMLA absence through November 14. During my absence I received an email from HR informing me that Mr. Pope was requiring me to return to campus immediately.

15. On November 13, 2022, I exchanged text messages with Jerry Pope and I explained:

> Would you be free for a phone call around 8 am? Christina [McGee] and I had spoken about the ADA, and I think I would like to move towards that vs FMLA in January. I truly believe I will get more answers at Mayo and improving my health. Bevause [sic] of that, instead of permanent accommodations, we reevaluate after 2-3 months to get me back to 5 days/week onsite. Anyway, just wanted to speak with you about it before I send my letter.

We spoke the following day and discussed accommodations of my condition that would include working remotely on a part-time basis and reasonable absences as needed for my medical condition. Mr. Pope seemed receptive to this proposal but told me that he felt like a formal ADA accommodation request was an "unnecessary step." I returned to work on a part-time basis from November 16 through 19, and campus was closed from November 21 through 27 for the Thanksgiving holiday.

3

16. I departed for the Mayo Clinic on November 27, and on November 28 I received an email from Dr. Mosier insisting that I make myself available to attend a meeting at KCKCC with Special Projects Coordinator Katie Lindgren on November 29. I responded to Dr. Mosier and Jerry Pope that I was at the Mayo Clinic on approved FMLA leave, and that Ms. Lindgren was away on bereavement. Dr. Mosier nevertheless insisted that we both make ourselves available to be on campus for the meeting. I made arrangements to participate remotely instead from Minnesota.

17. From November 27 through December 7, 2022, I was evaluated at the Mayo Clinic in Rochester, Minnesota. During my evaluation at the Mayo Clinic, I sought to be placed on continuous FMLA leave but my request was denied because I had various work-related deadlines on December 16. During a phone conversation during my evaluation at the Mayo Clinic, Jerry Pope explained that **"it is our expectation that you meet your deadlines. You are already behind on these projects because of your health."** During my absence I also sent numerous emails to Mr. Pope and Christina McGee with updates about my efforts to meet work-related deadlines while I was away. In my email communications I requested extensions of several deadlines that were denied. I asked Mr. Pope for confirmation that he had received my communications regarding my absence and my efforts to meet my work obligations during my evaluation, and he did not respond.

18. During my evaluation at the Mayo Clinic, I also received an email from HR on November 30 informing me that Jerry Pope was requiring me to submit 40 hours of time per week during my absence. I explained again that I was away from work on an approved FMLA absence and that Mr. Pope was aware of the nature of my medical condition and treatment.

19. In my role as Dean of Career and Technical Education, I am tasked with various responsibilities related to course scheduling. On December 6, 2022, I raised concerns with Jerry Pope that two minority instructors were being treated differently than their non-minority counterparts at KCKCC in course scheduling and related terms and conditions of their employment. On December 7 I received an angry email from Mr. Pope challenging the basis for the concerns I had raised with him. When we spoke by phone the same day, I explained that I intended to report my concerns to HR, and he refused to discuss my concerns further. He explained "[t]his is too messy. I don't even know how to process this." When I explained again that I disagreed with his unfair treatment of both minority instructors, he said "I gave you a directive. You will follow it." I made reports to HR about my concerns to HR the same day.

20. On December 16, 2022, I was placed on paid administrative leave after a meeting with KCKCC donors Tom Cohen and Brad Bergman of Midwest Trust on December 15. Christina McGee explained that she had received a complaint that I had somehow inappropriately shared student data with a third party in violation of the Federal Educational Rights and Privacy Act ("FERPA"). During my call with Ms. McGee on December 16, I denied that I had violated FERPA in any way and expressed that I felt that my suspension was directly related to my illness and to concerns regarding discrimination I had raised against myself and my colleagues.

21. On December 21, 2022, I was evaluated again by my primary care physician, Dr. Peter Cristiano, for my continuing extreme fatigue related to my diagnosis with PE. Dr. Cristiano authored another note at the time of my consultation that reflected that I suffered from "continued medical problems that are still under evaluation at the Mayo Clinic" and authorized me to continue intermittent FMLA leave for a period of at least six additional months. Thereafter I provided Dr. Cristiano's note to Christina McGee.

22. On February 3, 2023, a regularly scheduled mammogram was performed as part of my course of treatment that revealed a mass of an unknown origin. On February 6, an ultrasound was performed, and on a compression mammogram the following day revealed the mass was not moving. After a biopsy on February 22, I was diagnosed with and began treatment for breast cancer on February 24.[2]

23. My employment was terminated on January 12, 2023, on the purported basis that I had somehow violated FERPA by sharing student data with a third party. The rationale for the basis of my termination constitutes pretext for unlawful discrimination and retaliation against me.

24. I am disabled and perceived as disabled. I also have a record of impairments that substantially limit one or more major life activities. I was qualified with or without a reasonable accommodation to perform the essential functions of the position of Dean of Career and Technical Education.

25. The actions of KCKCC and its agents constitute discrimination and harassment against me on the basis of my disability and/or perceived disability.

26. KCKCC has failed to make good faith efforts to establish and enforce policies to prevent unlawful discrimination and retaliation against its employees.

---

[2] The ADA defines the term "disability" as "(A) a physical or mental impairment that substantial limits one or more major life activities; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C.A. § 12102(1). The 2008 Americans with Disabilities Amendment Act ("ADAAA") expended the definition of "major life activity" to include normal cell growth, rendering cancer a presumptive disability for the purposes of the ADA and ADAAA.

Doc ID: f3430440a2910b3584f3653a2bd5103e2d824e09

27. KCKCC has failed to properly train or otherwise inform its supervisors and employees concerning the its duties and obligations under civil rights laws, including the Americans with Disabilities Act and Title VII.

28. By failing to take prompt and appropriate corrective action, KCKCC has condoned, ratified, and/or authorized the Company's discrimination against and harassment of me.

29. I have suffered economic damages and emotional distress as a result of the discrimination and harassment for which KCKCC is responsible.

30. The conduct of KCKCC and its agents has been outrageous due to their evil motive and/or reckless disregard for my federal civil rights, entitling me to an award of punitive damages in an amount sufficient to punish KCKCC and its agents.

31. I seek compensatory damages, punitive damages, equitable relief in the form of front pay, and my reasonable attorneys' fees.

Doc ID: f3430440a2910b3584f3653a2bd5103e2d824e09